UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-00007-LM |
| | ) | |
| NEIL DEXTER | ) | |

## COMBINED MOTION TO WITHDRAW GUILTY PLEA AND MEMORANDUM IN SUPPORT (NOT ASSENTED)

Now comes the Defendant in the above-captioned case and respectfully requests that this Honorable Court permit him to withdraw his guilty plea prior to sentencing.

### INTRODUCTION

Pursuant to Fed. R. Crim. P. Rule 11(d)(2)(B), a Defendant "may" withdraw his guilty plea, prior to sentencing, if he can show "a fair and just reason for requesting the withdrawal."

A "fair and just reason" exists in this case, specifically, that he pleaded guilty based on the Government's representation that he needed to plead guilty to participate in the drug court program, to which he had been accepted. Following his guilty plea, RISE (the Massachusetts version of the LASER program) rejected Mr. Dexter, after which the Government withdrew its support for Mr. Dexter's admission into the program.

Because Mr. Dexter pleaded guilty to participate in a program, which program later excluded him, a fair and just reason exists for requesting the withdrawal.

## <u>FACTS AND PROCEDURAL HISTORY</u>

On January 9, 2019, a grand jury for the District of New Hampshire returned the instant indictments against Mr. Dexter, which charged conspiracy and possession with intent to distribute fentanyl, in connection with a December 1, 2018 seizure of 1,047 grams of fentanyl incident to a state police traffic stop.

Shortly after his arrest and placement on supervised release, Mr. Dexter tested presumptively positive for fentanyl. Though he initially denied use, following his placement in the Strafford County, NH Sheriff's Therapeutic Communities (TC), Mr. Dexter quickly came to accept that he was powerfully addicted to opioids.  Mr. Dexter embraced his treatment and flourished there.

In a letter to counsel, Mr. Dexter wrote:

> [T]his TC program probably saved my life. It made me look into myself and discover why I was masking my pain with drugs, why I hid my feelings with drugs and why I let the drugs take over ... I've learned the tools I'll need to stay away from situations where I'd do drugs and I've learned what to do if I am tempted.

> Attachment A.

In that letter, he also recounted his experiences taking on a leadership role within the recovery community, including speaking to children about addiction: "Little does [Asst.

2

Superintendent Jake Collins] know that it helps me more than he thinks it helps the kids.  Telling the story of my addiction and the possibility of helping someone avoid the life I suffered through [gives] me meaning." Id.[1]

Following his admission to TC in April, 2019, Mr. Dexter never relapsed again.

After Mr. Dexter's release from TC, he submitted urine samples, several of which returned presumptively positive results for the presence of fentanyl.

Each of the presumptively positive test results was a false positive.

Mr. Dexter's probation officers struggled to accept that the tests were producing inaccurate results.

Kratom in Mr. Dexter's system triggered the false presumptive positive results.  Kratom is a naturally occurring, but unscheduled and legal, substance.  Several years ago, the DEA attempted to classify kratom as a controlled substance, but its efforts were met with such widespread opprobrium that it withdrew its intent. 21 CFR Part 1308 [Docket No. DEA-442W]. Attachment B.

Proponents of kratom use maintain that "it has been shown ... to help recovering Opiate addicts[] treat pain, combat

---

[1]    Attachment A also includes certificates of completion and letters from other individuals who benefitted from the Defendant's willingness to share his experience.

depression and anxiety, and much more." <u>Nick Wing</u>, More Than 100,000 People Urge Obama To Stop The DEA From Banning Kratom (Huffington Post, Sept. 7, 2016). Attachment C.[2]

Setting aside the debate surrounding the effectiveness of kratom, one unanticipated component of kratom ingestion, specifically at issue here, is that it triggers false positives for the presumptive presence of fentanyl. That is exactly what occurred in this case: when submitted for confirmatory testing, the preliminary, presumptive positive screens were confirmed to be negative for fentanyl and positive for kratom.

On July 29, 2019, Mr. Dexter submitted a sample which came back presumptively positive for fentanyl. He denied use, following which Probation Officer Karin Hess submitted that sample for confirmatory testing, which the two discussed via text on August 22, 2019:

> Dexter: "Hello Karin. Hope all is well with you. I was wondering if my lab results have come back yet."

> Hess: "Hi. Results are negative. It's due to the Kratom as to why you tested positive."

On August 26, September 9, and September 11, 2019, Mr. Dexter submitted additional samples, each of which tested presumptively positive for fentanyl. Mr. Dexter denied use.

---

[2]     The public comments on the proposed ban are available at
https://www.regulations.gov/document/DEA-2016-0015-0006/comment

For reasons still unknown, Probation chose not to submit the samples from August and September for confirmatory testing, despite the known false positive from July 2019, and despite Mr. Dexter's assertion that he was not using fentanyl.

Mr. Dexter had a bail review hearing on October 2, 2019. When he arrived, probation informed him that it had filed an allegation that he violated his release conditions by consuming fentanyl on July 29, August 26, September 9, and September 11, 2019.  A bail review hearing suddenly turned into a bail revocation hearing.

Despite its own admission via text that he was "negative" for fentanyl and that kratom triggered a false positive, Probation submitted a violation report to the Court which asserted that Mr. Dexter tested positive for fentanyl on July 29, 2020, but which failed to disclose that confirmatory testing came back negative for fentanyl. Paper No. 59.  That same report referenced positive drug screens from August and September but failed to reveal that those samples had not been sent for confirmation testing.

Prior to the hearing, Probation convened a meeting with Mr. Dexter and undersigned counsel.  Probation confronted Mr. Dexter and exhorted him to confess that he had relapsed.  Again, Mr. Dexter denied use.  Mr. Dexter pointed to Probation's earlier admission that confirmatory testing revealed that the July 2019

5

preliminary test returned a false positive.  He requested the confirmatory test results regarding the samples from August and September.

Probation dismissed his arguments.  In a reversal from its earlier admission that the July 2019 screen was a false positive, Probation asserted that the preliminary test was right, and the confirmatory test result was wrong.  Probation claimed, without proof, that there were new variations of fentanyl which the confirmatory test was not able to detect. Consequently, Probation asserted that no confirmatory testing was required.

Probation presented Mr. Dexter with an ultimatum.  If he confessed to a relapse, Probation would recommend treatment.  If he continued to assert his innocence, Probation would recommend detention until trial.

Under the pressure from probation and his counsel's warning that a false denial would jeopardize his future acceptance into drug court, Mr. Dexter decided under duress to falsely admit to fentanyl use.  As a consequence, the Court detained Mr. Dexter pending his November 12, 2019 admission to an inpatient drug treatment facility, the Phoenix House.

After matriculating from the Phoenix House, Mr. Dexter entered the Bonfire sober living facility. He was then transferred to Freeman House after Bonfire unexpectedly closed.

On April 1, 2020, the Court granted Mr. Dexter's request to move back home to Hyannis due to the onset of the COVID-19 pandemic.

On April 13, 2020, Probation once again alleged that preliminary screenings tested presumptively positive for fentanyl.  Mr. Dexter denied using fentanyl or kratom.  He requested confirmation testing.  After confirmation testing, the results were negative for fentanyl but positive for kratom. After researching everything he consumed in the days preceding the test, Mr. Dexter discovered that the traditional Philippine Mambog tea he drank every day, as he learned to do from his mother and grandmother, might contain naturally occurring kratom.  On the basis of this evidence, Mr. Dexter requested a full hearing on the alleged violation, following which Probation withdrew the violation on the morning of the hearing.

Mr. Dexter agreed he would abstain from using kratom, which abstention was, for the first time, added to his conditions of pretrial probation on May 4, 2020.

On June 2, 2020, Mr. Dexter pleaded guilty to the indictment after the government recommended him for participation in drug court / LASER.

On October 6, 2020, probation requested, and the Court issued a summons for a bail revocation hearing.

Three days prior to the court hearing on that request, the RISE program issued a letter denying Mr. Dexter entry into the

RISE program.  Although that letter provided no reason for the

denial, on December 29, 2020, following a request for

reconsideration and in response to undersigned's inquiry,

Probation reported that the RISE committee:

> cited to the D/NH USAO's withdrawal of Mr.
> Dexter's LASER approval, his overall conduct
> while on pretrial release, including his
> continued kratom use, his statements to Sr.
> U.S. Probation Officer Gina P. Affsa
> advising that he is not in need of
> additional treatment, the resources already
> allocated to Mr. Dexter over the course of
> his pretrial supervision, and the need to
> focus limited resources on more appropriate
> candidates.[3]

On October 26, 2020 the Court conducted a hearing on

probation's bail revocation request.  With respect to this

allegation, again, preliminary test results were presumptively

positive for the presence of fentanyl on August 7, 2020,

September 9, 2020 and September 15, 2020.  With respect to this

allegation, again, confirmation testing revealed that Mr. Dexter

had not consumed fentanyl, but had consumed kratom.

At the hearing, Mr. Dexter accepted full responsibility for

having consumed kratom, and stipulated to the violation.  By way

of mitigation, counsel shared an email Mr. Dexter sent at 2:31

---

[3]    On March 1, 2021 AUSA Dronzek clarified that the RISE committee reached
out to her in October 2020.  She provided information regarding the case and
offered that although Mr. Dexter had had some issues on supervision, she
considered him an appropriate candidate for their program. Following RISE's
decision to deny Mr. Dexter's application, and upon Mr. Dexter's request for
reconsideration, AUSA Dronzek withdrew her recommendation of Mr. Dexter for
LASER.

in the morning on October 9, 2020:

> My wife and I have been up all night racking
> our brains on why these tests are continuing
> to come up positive for Kratom ... It's not
> great news but it explains everything ...
> I'd like to get out in front of it as from
> what we figured out I don't even think it
> was ever the tea that was causing kratom to
> be in my system.  I am unbelievably upset as
> it's my own damn fault ... My life is in
> shambles over this so I'd like to tackle it
> head on and face the consequences ... I'm
> afraid if we don't bring this to their
> attention immediately I'm going to lose the
> RISE program ... I'm ready to throw myself
> at the mercy of the court[.]

At the hearing, and after consideration of all the facts, Chief Judge Landya B. McCafferty advised Mr. Dexter that his story regarding the vape liquid did not "ring true," and admonished Mr. Dexter regarding his poor judgment as to kratom. The Court then focused on recognizing and congratulating Mr. Dexter on the strides he had made in his battle with his substance use disorder.

Following that hearing, the Court approved a motion for funds for chemical analysis of the vape liquid.  On January 4, 2021, the laboratory produced a GCMS analysis revealing that the vape liquid, in fact, contained kratom (mitragynine). Attachment D.

As of October 9, 2020 - the day he first suspected that the vape liquid contained kratom, Mr. Dexter quit vaping.  All drug screens subsequent to that date have been clean. Attachment E -

urinalysis log.[4]

Mr. Dexter has remained opiate free since his admission to the TC program in April 2019.

He maintains his sobriety through a combination of narcotics anonymous, meditation and prayer.

## GOVERNMENT'S POSITION

On April 20, 2021, AUSA Dronzek notified counsel via email that the Government objects to this motion.

## ARGUMENT

Pursuant to Fed. R. Crim. P. Rule 11(d)(2)(B), a Defendant "may" withdraw his guilty plea, prior to sentencing, if he satisfies his burden of persuading the court that there exists "a fair and just reason for requesting the withdrawal." United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997). The district court evaluates the request by considering factors, "the most significant being whether the plea was voluntary, intelligent and knowing, within the meaning of Rule 11." Id. "Other relevant considerations ... include: (1) the plausibility and weight of the proffered reason; (2) the timing of the request; (3) whether the defendant asserted legal innocence; and (4) whether the parties had reached, or breached, a plea agreement."  The Court must also weigh "any demonstrable

---

[4]    At counsel's request, Probation Officer Eric Gray furnished this report on December 29, 2020.

prejudice to the government" from withdrawal of the plea. Id.

In consideration of that "most significant factor" - whether the plea comported with Rule 11, Mr. Dexter concedes that the record establishes that the Court conducted a meticulous colloquy which met the "core" concerns animating that rule. Id., at 348. See Paper No. 131, transcript of plea hearing.

What the record equally establishes is the unanimity of the parties as to what would occur after the plea: that Mr. Dexter would be admitted to the drug court program.  Mr. Dexter pleaded guilty because he was informed that he could only enter the drug court program if he pleaded guilty.

The reasons which RISE cited for denying Mr. Dexter access to drug court included the USAO's withdrawal of Mr. Dexter's LASER approval, his conduct on release and kratom use, his purported statement that he denied the need for treatment, and the limited resources of the program.

At the time of his plea, Mr. Dexter was not fairly on notice that any of those issues, alone or in combination, would serve to disqualify him from drug court.

First, RISE cites AUSA Dronzek's withdrawal of support for Mr. Dexter as a reason for excluding Mr. Dexter from RISE.  But as AUSA Dronzek makes clear, her withdrawal of support for Mr. Dexter occurred only because RISE rejected him in the first

instance.  Consequently, what can best be described as a
"chicken or the egg" scenario emerges where 1) RISE cites as a
reason for rejection 2) the AUSA's withdrawal of support; 3)
which RISE's first rejection occasioned.  Mr. Dexter was not on
notice that bizarre feats of circular logic would determine his
eligibility for treatment.

Second, RISE cites Mr. Dexter's conduct on release and
kratom use.

As to Mr. Dexter's conduct on release, RISE did not
describe what Mr. Dexter actually did while on release that
rendered him an inappropriate candidate for treatment.  Mr.
Dexter never failed to communicate or meet with his probation
officers when requested.  He never missed a drug screen and
picked up no new charges.

When Probation accused Mr. Dexter of using fentanyl, he
asserted his innocence and requested confirmation testing.  He
was correct to do so: probation repeatedly accused him of using
fentanyl when he had not.  Surely, protestation of innocence in
the face of false accusations is not grounds for reproach.  What
merits reproach is:

- Probation's decision to conceal from the Court that
  confirmation testing of the July 29, 2019 sample proved
  negative for fentanyl;

- Probation's decision to conceal from the Court that,
  despite confirmation testing proving the July 29, 2019
  preliminary test was a false positive, Probation failed

to submit the next samples from August and September 2019 for confirmatory testing;


- Probation's failure to disclose on its report to the Court that it had failed to confirm its tests in the face of every indication that the August and September 2019 results were also false positives;

- that Probation coerced Mr. Dexter into falsely admitting use based on its assertion that the confirmatory test results were inaccurate, but the preliminary test results were accurate, despite universal acceptance of the premise that confirmatory / GCMS testing is scientifically superior in every way; and

- the fact that Probation's less than forthright tactics landed Mr. Dexter in jail and rehab based on allegations of fentanyl use which Probation knew or should have known were bogus.

Mr. Dexter certainly was not on notice that his objection to Probation's insistence on a false narrative would be viewed as grounds to disqualify him from treatment.

Regarding his conduct on release, then, what remains is the occasions in which kratom was detected in Mr. Dexter's system and Mr. Dexter's explanation for its presence.

In the first instance, it is important to underscore that kratom is categorically not an illegal or controlled substance. The DEA's effort to add kratom to the federal register met widespread opposition and was abandoned.

When Mr. Dexter was first released from the TC program, he used kratom as a supplement to his recovery strategy.  It was lawful for him to do so, and many in the recovery community

maintain that kratom is effective in that regard.  Thereafter, Mr. Dexter continued to test positive for kratom use, which he denied.  Mr. Dexter first suspected that his cultural Mambog tea might contain kratom, but when he stopped drinking the tea, his drug screens continued to show kratom in his system.  At that point, Mr. Dexter realized that his vape liquid might be the problem.  Consequently, he immediately stopped vaping and his drug screens have been clean ever since.

The only sustained allegation that Mr. Dexter used kratom in violation of a Court Order occurred on October 26, 2020, related to the August 7, 2020, September 9, 2020 and September 15, 2020 samples which confirmatory testing revealed contained kratom.  Mr. Dexter stipulated to the violation.

At the violation hearing, the Court expressed skepticism regarding Mr. Dexter's explanation for the kratom in his system. The Court, and the treatment community, certainly had good reason to doubt his explanation.  Mr. Dexter recognizes that the credibility of his explanation is affected by his history with kratom as well as a general understanding that users deny use as a function of the disease.

On the other hand, Mr. Dexter had not a single positive drug screen after he stopped vaping.  He stopped vaping after suspecting that the vape liquid was the problem (which laboratory testing later confirmed, see Attachment D).  That all

14

of his drug screens were clean after he quit vaping suggests
that the positive kratom screens flowed from inadvertent
consumption of kratom rather than a concealed kratom habit.  Of
course, inadvertent consumption of kratom shows lack of due care
- itself problematic - but certainly less so than deception.

Setting aside the issue of whether Mr. Dexter's kratom use
was intentional or not, the fact remains that he was only found
in violation for kratom use one time, where he admitted use,
then stopped using.  He has since had nothing but immaculate
drug screens.

Thus, the "issues with kratom" which Mr. Dexter experienced
involved a violation of his release conditions during August and
September, 2020, followed by acceptance of responsibility for
his mistake, followed by affirmative steps to correct his
behavior.  These issues were well within the lane in which most
people struggling with addiction travel on the road to recovery,
and Mr. Dexter was not fairly on notice that stumbles of this
nature would serve as the basis for the drug court program to
reject him.

Setbacks are part and parcel of the recovery process.  In
fact, if every person with substance use disorder were denied
care because of a setback, nobody would be in treatment.  What
is important is that those in recovery acknowledge their
mistakes and remain committed to getting better.  Mr. Dexter did

exactly that.  In his own words, at 2:30 in the morning, he
stated: "I am unbelievably upset as it's my own damn fault ...
My life is in shambles over this so I'd like to tackle it head
on and face the consequences."  And he did exactly that.  The
problem ended with the single violation hearing and he has been
in perfect compliance since.

     The third reason which RISE cited in denying Mr. Dexter
access to drug court related to a probation officer's claim that
Mr. Dexter denied the need for further treatment.  Stated
plainly, Mr. Dexter denies that he ever rejected the need for
treatment.  Mr. Dexter remains in the fight of his life.  Unlike
many addicted persons, he has acknowledged his addiction and
embraced the struggle required to overcome it.  Against the
odds, he is winning his battle day by day with a combination of
narcotics anonymous, meditation and prayer.  Even more, he has
taken leadership roles in the recovery community, sharing his
experience and helping others in their struggle to overcome the
deadly disease.

     Mr. Dexter reasonably expected that the prosecutor who
recommended the program and the committee which oversees it were
conversant in the struggle which sobriety entails, and able to
recognize his substantial commitment to recovery.  He reasonably
believed that if he continued to commit to his recovery in good
faith, and if he picked up no new charges, he would receive the

benefit of the bargain.

To the extent that the drug court program applies standards which are inconsistent with the known trajectory of recovery, Mr. Dexter was owed notice of those standards, in clear and explicit terms, prior to surrendering his right to trial by jury.  He received no such warning. Prior to agreeing to plead guilty, Mr. Dexter reviewed and carefully considered the criteria for placement in the drug court program. Attachment F.[5] Those criteria did not adequately place Mr. Dexter on notice that he would be denied treatment under the circumstances now before the Court.

None of the remaining factors which the Court must consider detract from the reasonableness of Mr. Dexter's request.  As to the "timing of the request," Mr. Dexter makes his request weeks before his sentencing and as promptly as possible after reviewing all pertinent transcripts and conferencing the issue in detail with the United States Attorney.  As to "whether Mr. Dexter asserted legal innocence," he does not, but will litigate a motion to suppress. As to "whether the parties had reached, or breached, a plea agreement," the parties submitted a written

---

[5]     The criteria also make clear that "The United States Attorney retains exclusive discretion to decide whether to authorize a pretrial defendant's participation in the LASER Docket," a fact which was already made clear to the Defendant by AUSA Dronzek.  The AUSA's guidance and the admission criteria itself, which the AUSA furnished to the Defendant, underscore the Defendant's reasonable reliance on AUSA Dronzek's statement that he had been accepted into drug court when deciding to plead guilty.

plea agreement, which Mr. Dexter does not contend was breached. Drug court was not set forth within the plea agreement, as the prosecutor relates is her office's customary practice, but the parties do not dispute that Mr. Dexter was informed that he had been accepted into drug court, that he needed to plead guilty to participate in drug court, and that those two circumstances were material to his decision to plead guilty.

Finally, the Court must also weigh "any demonstrable prejudice to the government" from withdrawal of the plea.  Mr. Dexter is unaware of any prejudice to the Government flowing from the withdrawal of the plea.  The Government's case rises and falls almost exclusively on the testimony of a New Hampshire State Police trooper who stopped Mr. Dexter in a car and discovered drugs in the possession of a co-Defendant.  The Government's case has not deteriorated or changed in any material way since Mr. Dexter's arrest.

CONCLUSION

Mr. Dexter's acceptance in and expected admission into the drug court program was material to his decision to plead guilty. Mr. Dexter was not adequately placed on notice that the drug court would deny him admission for the reasons which the RISE program cited.  That Mr. Dexter did not receive the benefit of the bargain creates "a fair and just reason for requesting the withdrawal."

18

Mr. Dexter respectfully requests that this Honorable Court permit him to withdraw his plea prior to sentencing and litigate his motion to suppress.

**REQUEST FOR HEARING**

Mr. Dexter respectfully requests a hearing on this motion.

Respectfully submitted,
Neil Dexter,
By and through his Attorney,
/s/ Murat Erkan
Murat Erkan, MA BBO# 637507
Erkan & Associates, LLC
300 High Street
Andover, MA 01810
Date:  April 20, 2021          (978) 474-0054

CERTIFICATE OF SERVICE

I, Murat Erkan, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 20, 2021.

/s/ Murat Erkan
Murat Erkan, Massachusetts BBO No. 637507